IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT WAGNER, )
)
Plaintiff, )
) Civil Action No.: 08 C 2750
v. )
) Suzanne B. Conlon, Judge
ALLIED PILOTS ASSOCIATION )
DISABILITY INCOME PLAN (LOSS OF )
LICENSE), )
)
Defendant. )
)

## MEMORANDUM OPINION AND ORDER

Wagner sues Allied Pilots Association Disability Income Plan (Loss of License) under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), to recover long-term disability benefits. The parties move for partial summary judgment on the issue of whether the case should be remanded for the plan to reopen Wagner's claim and consider additional evidence. For the reasons set forth below, the plan's partial summary judgment motion is granted.

## BACKGROUND

Wagner was a pilot for American Airlines until July 22, 2005, when he ceased flying on the basis of a claimed disability. According to Wagner, on July 21, 2005, he incurred barotrauma (injury from pressure changes) during a flight, which resulted in perilymph fistula – an inner ear injury. Wagner argues the alleged condition prevents him from flying because it causes him constant disequilibrium, vertigo, and visual disturbance.

During his American Airlines employment, Wagner was a member of the Allied Pilots Association Disability Income Plan. The plan provides income to pilots when a long-term disability prevents them from working. Wagner's coverage was effective April 1, 2005.

On May 10, 2006, Wagner filed a benefits claim under the plan. Def. Ex. A(1). Wagner reported chronic sinusitis, migraines, and dizziness, and stated July 2005 was the date of the accident or when he first noticed symptoms. *Id.* In response to the plan's request, Wagner's doctor, Dr. Timothy Hain, submitted a statement in which he diagnosed Wagner with perilymph fistula and a sinus headache. Def. Ex. A(3).

The plan's third-party administrator denied Wagner's claim because his condition was pre-existing. Def. Ex. A(4). The plan's pre-existing condition exclusion defines a pre-existing condition to include a sickness or injury for which the plan participant received medical treatment or consultation within 12 months prior to the plan's effective date. *Id.*; Am. Compl., Ex. A at 30-31. The plan advised that medical records from Dr. Stephen Yeh showed Wagner received treatment for chronic sinusitis, migraines, and dizziness in the 12 months prior to Wagner's effective coverage date. *Id.* The plan informed Wagner that he could appeal its decision and submit supporting information within 180 days. *Id.*

Wagner timely appealed the denial and submitted supplemental statements from Drs. Hain and Yeh. Def. Ex. A(5). Dr. Hain reported Wagner's dizziness diagnosis is not pre-existing; rather, it is caused by perilymph fistula – a common injury in pilots. *Id.* According to Dr. Hain, Wagner previously suffered dizziness from other conditions, not perilymph fistula. *Id.*

Dr. Yeh stated he treated Wagner for chronic sinusitis, migraines, and migraine-associated disequilibrium. *Id.* However, in 2005, Wagner had sinus surgery, which alleviated

2

these symptoms. *Id.* Subsequent to the surgery, Dr. Hain diagnosed Wagner with perilymph fistula, which, according to Dr. Yeh, is a distinct cause of disequilibrium. *Id.* Dr. Yeh reported that the first notation in his records regarding Wagner's perilymph fistula is December 13, 2005. *Id.*

The plan treated Wagner's filing as a supplement to his original claim, not an appeal. Def. Ex. A(6). On October 12, 2006, the plan's third-party administrator denied the claim because Wagner's disability began on July 22, 2005 – within six months of his April 1, 2005 effective coverage date. *Id.* Under the plan, claims occurring within six months of the effective date are ineligible for benefits unless the disability is due to an injury occurring after the effective date. *Id.*; Am. Compl., Ex. A at 11, 34. The plan informed Wagner that any appeal and supporting information must be filed within 180 days. Def. Ex. A(6).

Wagner timely appealed the denial (Def. Ex. A(7)), and submitted an updated letter from Dr. Hain, which provided information about perilymph fistula. Def. Ex. A(8). In response to the plan's request for additional medical information and records, Dr. Hain provided an October 17, 2005 report and examination notes stating Wagner's differential diagnosis is between migraine-associated vertigo and perilymph fistula. Def. Ex. A(11).

In accordance with the plan's appeal process, the plan forwarded Wagner's records to the Network Medical Review Elite Physicians ("NMR") for an evaluation. NMR reported that Wagner's medical records show he was evaluated for symptoms consistent with perilymph fistula beginning in 2001. Def. Ex. A(13); Pl. Ex. 1 at LOL000089. NMR also reported that no specific event caused the perilymph fistula. Def. Ex. A(13); Pl. Ex. 1 at LOL000089. The plan does not

3

provide NMR's report to participants prior to the appeal decision. Def. Ex. B, Keith C. Wilson Dep. Tr. at 17:20-22; 18:1-3; Def. Ex. A, Kenneth M. Knoerr Dep. Tr. at 19:16-22; 20:1.

On June 29, 2007, the plan's Benefits Review and Appeals Board denied Wagner's appeal. Def. Ex. A(13). The appeals board found the initial basis for his claim (chronic sinusitis, migraines, and dizziness) was a pre-existing condition. *Id.* And the subsequent basis (perilymph fistula) was an ineligible claim under the plan because it occurred within six months of his effective coverage date, and was not an injury occurring after the effective date. *Id.* The appeals board cited NMR's report and relied, *inter alia*, on its findings. *Id.* The plan informed Wagner that he had exhausted the administrative appeal process and, therefore, could file an ERISA action. *Id.*

Wagner requested and received his claim file from the plan (Def. Ex. A(14)), including NMR's report (Pl. Ex. 1). On March 12, 2008 – 517 days after the plan denied Wagner's supplemented claim for benefits – Wagner sought to reopen the appeal to respond to NMR's report. Def. Ex. A(16). Wagner submitted another letter from Dr. Hain and a letter from Dr. F. Owen Black. *Id.* The doctors disputed NMR's opinion that Wagner's perilymph fistula began in 2001. According to Drs. Hain and Black, prior to July 2005, Wagner suffered only *transient* disequilibrium; sinusitis caused Wagner's transient disequilibrium. Wagner now suffers *persistent* disequilibrium, and has since July 2005 when he was landing a plane. Perilymph fistula causes persistent disequilibrium. *Id.* The doctors opined that Wagner could not have safely piloted a plane from 2001 to 2005 if he suffered from perilymph fistula. *Id.*

The appeals board denied Wagner's request to reopen the appeal as untimely. Def. Ex. A(17). The appeals board determined that it had no authority under the plan's terms to consider material submitted after the 180-day appeal deadline. *Id.*

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The moving party has the initial burden of demonstrating that it is entitled to summary judgment." *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004) (citing *Celotex Corp.*, 477 U.S. at 323). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the nonmoving party. *See Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2002). A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### II. ERISA Standard

If an ERISA plan expressly grants the plan administrators or fiduciaries discretion to determine benefits eligibility or interpret plan terms, then the abuse of discretion standard of

review[1] applies in reviewing those decisions. *See Ross*, 159 F.3d at 1008-09. The parties agree that the plan grants its fiduciaries this discretion (Am. Compl., Ex. A at 22-23), and that the abuse of discretion standard of review applies to the issue of whether the plan should have reopened Wagner's claim after the 180-day appeal deadline.

Wagner, however, argues the abuse of discretion standard should be applied more rigorously, citing *Metropolitan Life Ins. Co. v. Glenn*, ___ U.S. ___, 128 S. Ct. 2343 (2008). In *Glenn*, the plan administrator of a long-term disability plan not only evaluated benefit claims, but also was the plan sponsor and paid the benefits. This conflict of interest was held to be a necessary consideration in applying the abuse of discretion standard of review. *Id.* at 2351-52. It is undisputed the plan is funded entirely by plan participant contributions. Knoerr Dep. Tr. at 10:20-22; 11:1-11. The plan, therefore, does not operate under the conflict of interest discussed in *Glenn*. The deferential abuse of discretion standard of review will be applied.

## III. Request to Reopen Claim

Wagner argues the plan abused its discretion in denying his request to reopen the appeal to consider Drs. Hain and Black's letters. According to Wagner, he was denied a full and fair review of his claim because he had no opportunity to refute the NMR report.

The plan document expressly provides that benefit claim denials must be appealed, and any supporting materials provided, within 180 days after benefits are denied. Am. Compl., Ex. A at 18-19. The plan document states "[t]here will be no exception to this rule." *Id.* at 19. The

---

[1] The abuse of discretion and arbitrary and capricious standards of review have been used interchangeably in this context. *Ross v. Indiana State Teacher's Ass'n Ins. Trust*, 159 F.3d 1001, 1008-09 (7th Cir. 1998).

6

plan explicitly advised Wagner of this deadline when it denied his benefits claim. Def. Ex. A(4) and (6).

A plan fiduciary must administer the plan pursuant to its unambiguous terms. *See* 29 U.S.C. § 1104(a)(1)(D); *Call v. Ameritech Mgmt. Pension Plan*, 475 F.3d 816, 822-23 (7th Cir. 2007). It is undisputed that Wagner requested to submit additional materials *after* the 180-day time period expired. The appeals board had no authority to deviate from the plan's rule to consider Wagner's untimely submission.

The plan's rule is consistent with the Department of Labor's regulation requiring plans to provide participants with at least 180 days to appeal an adverse benefit determination. 29 C.F.R. § 2560.503-1(h)(3)(I). According to the Department of Labor, the 180-day requirement affords participants a reasonable opportunity to appeal an adverse benefit determination and a full and fair review of the claim and adverse decision. 29 C.F.R. § 2560.503-1(h)(1). The 180-day requirement provides claimants adequate time to determine whether an appeal is warranted, and to assemble additional evidence to support their claims. ERISA, Proposed Rules and Regulations for Administration and Enforcement, Claims Procedure, 63 Fed. Reg. 48390, 48393 n.10 (Sept. 9, 1998).

A plan is not required to provide an indefinite appeals process. *See, e.g., Speciale v. Blue Cross & Blue Shield Ass'n*, 538 F.3d 615, 623 (7th Cir. 2008). In *Speciale*, Blue Cross' long-term disability plan administrator denied Speciale's benefits claim and appeal. Five months later, Speciale requested reconsideration based on a ruling from the Social Security Administration finding her disabled and awarding her social security benefits. The administrator properly denied the request as untimely and not dispositive. *Id.* at 620, 623; *accord Tegtmeier v. Midwest*

*Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1046-47 (7th Cir. 2004) (pension fund's decision not to reopen claims process after final decision to consider a favorable Social Security Administration decision was proper because of plan's concern for finality of decisions).

Wagner cites several decisions to support his claimed entitlement to submit additional evidence to rebut the NMR report. But the cases are inapposite. They address either whether evidence an unsuccessful claimant submits prior to filing an ERISA lawsuit becomes part of the administrative record before the district court, or claimants' *timely* requests to submit additional, material evidence to the plan. *See, e.g., Vega v. Nat'l Life Ins. Servs.*, 188 F.3d 287, 300 (5th Cir. 1999); *Jones v. Reliance Standard Life Ins. Co.*, No. 01 C 2735, 2003 WL 21730124, at *3 (N.D. Ill. July 24, 2003) (Marovich, J.); *Abate v. Hartford*, 471 F. Supp. 2d 724, 733-34 (E.D. Tex. 2006) (Crone, J.); *Carrington v. Hartford Life & Accident Ins. Co.*, No. 05-3261, 2007 WL 2177688, at *3-4 (E.D. La. July 27, 2007) (Lemelle, J.); *Worford v. Monarch Dental Assocs.*, No. 3:04 CV 1903, 2007 WL 846553, at *8 (N.D. Tex. Mar. 21, 2007) (Buchmeyer, J.); *Finley v. Hartford Life & Accident Ins. Co.*, No. C 06-6247, 2007 WL 4374417, at *10 (N.D. Cal. Dec. 14, 2007) (Wilken, J.).

The issue here is distinct. It is undisputed Wagner's request was untimely. Wagner, however, argues he never had the opportunity to address NMR's report. NMR reported that Wagner was evaluated for symptoms consistent with perilymph fistula beginning in 2001, and that no specific event caused the perilymph fistula. The appeals board relied on these findings and Wagner's medical records to conclude Wagner's dizziness condition was pre-existing, and that his perilymph fistula claim was ineligible for coverage because it occurred within six months of coverage date, and was not the result of an injury occurring after the effective date.

These are the precise reasons the plan's third-party administrator twice denied Wagner's claim. Wagner had an opportunity to respond to the NMR's findings, *albeit* not labeled "NMR's" findings at the time. Wagner had 180 days to appeal the plan's denials and submit supporting materials. Indeed, he was allowed two 180-day time periods because the plan treated his initial appeal as a supplemental claim. And Wagner did in fact respond. He appealed both denials, and submitted supplemental statements from his doctors, including Dr. Hain. Wagner's doctors explained Wagner previously suffered dizziness from other conditions, not perilymph fistula, and explained perilymph fistula. Wagner received a full and fair review of his claim, but it was denied. The propriety of that decision is the subject of Wagner's ERISA lawsuit. No genuine issue of material fact requires a remand to reopen Wagner's claim.

## CONCLUSION

The plan's motion for partial summary judgment is granted. Wagner's cross-motion for partial summary judgment is denied. The appeals board did not abuse its discretion in denying Wagner's request to reopen his appeal to consider Drs. Hain and Black's letters.

ENTER:

Suzanne B. Conlon
United States District Judge

January 16, 2009