IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT WAGNER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ALLIED PILOTS ASSOCIATION )<br>DISABILITY INCOME PLAN (LOSS OF )<br>LICENSE), )<br>)<br>Defendant. )<br>) | Civil Action No.: 08 C 2750<br><br>Suzanne B. Conlon, Judge |

## MEMORANDUM OPINION AND ORDER

Robert Wagner, a former American Airlines pilot, sues Allied Pilots Association Disability Income Plan (Loss of License) under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Wagner challenges the plan's denial of his long-term disability benefits claim. The plan moves for summary judgment. For the reasons set forth below, the plan's summary judgment motion is granted.

## BACKGROUND

### I. Local Rule 56.1

Local Rule 56.1 requires litigants to follow a detailed procedure in filing and responding to summary judgment motions. The movant must submit a statement of material facts, not to exceed 80 numbered paragraphs; each paragraph must identify affidavits, parts of the record, and other supporting materials relied upon. Local Rule 56.1(a)(3). The opposing party must respond to each numbered paragraph in the movant's statement including, in the case of disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied

upon. Local Rule 56.1(b)(3). The opposing party may also submit a statement of supplemental material facts, not to exceed 40, that require summary judgment denial. Local Rule 56.1(b)(3)(C).

## II. Background

The following facts are derived from the parties' Local Rule 56.1 statements and exhibits. Wagner was a pilot for American Airlines until July 22, 2005, when he ceased flying on the basis of a claimed disability. Def. Facts ¶ 1. Wagner was a member of the Allied Pilots Association Disability Income Plan. His coverage was effective April 1, 2005. *Id.* ¶ 2. The plan provides income to pilots when a long-term disability prevents them from working. It is funded entirely by plan participant contributions. *Id.* ¶ 3.

On May 10, 2006, Wagner filed a benefits claim under the plan. Def. Ex. B(1). He reported chronic sinusitis, migraines, and dizziness, and stated July 2005 was the date of the accident or when he first noticed symptoms. *Id.* In response, the plan requested a statement and records from Wagner's treating physician, Timothy Hain, M.D. Def. Ex. B(2). Dr. Hain submitted a statement in which he diagnosed Wagner with perilymph fistula (inner ear injury) and a sinus headache. Def. Ex. B(3).

The plan denied Wagner's claim because his chronic sinusitis, migraines, and dizziness were pre-existing. Def. Ex. B(4). The plan's pre-existing condition exclusion defines a pre-existing condition to include a sickness or injury for which the plan participant received medical treatment or consultation within 12 months immediately prior to the plan's effective date of coverage. *Id.*; Def. Ex. C at 14. The plan advised that medical records from Stephen Yeh, M.D.

showed Wagner received treatment for chronic sinusitis, migraines, and dizziness in the 12 months prior to Wagner's effective coverage date. Def. Ex. B(4).

Wagner appealed the denial and submitted letters from Drs. Hain and Yeh. Def. Ex. B(5). Dr. Hain reported Wagner's dizziness diagnosis is not pre-existing; rather, it is caused by perilymph fistula – a common injury in pilots. *Id.* According to Dr. Hain, Wagner previously suffered dizziness from other conditions, not perilymph fistula. *Id.*

Dr. Yeh stated he treated Wagner for chronic sinusitis, migraines, and migraine-associated disequilibrium. *Id.* However, in 2005, Wagner had sinus surgery, which alleviated these symptoms. *Id.* Subsequent to the surgery, Dr. Hain diagnosed Wagner with perilymph fistula, which, according to Dr. Yeh, is a distinct cause of disequilibrium. *Id.* Dr. Yeh reported that the first notation in his records regarding Wagner's perilymph fistula associated dizziness is December 13, 2005. *Id.*

The plan treated Wagner's appeal as a supplement to his original claim. Def. Facts ¶12 and Ex. B(6). The plan denied the claim because Wagner's disability began on July 22, 2005 – within six months of his April 1, 2005 effective coverage date. Def. Ex. B(6). Under the plan, claims occurring within six months of the effective date are ineligible for benefits unless the disability is due to an injury occurring after the effective date. *Id.*; Def. Ex. C at 3.

Wagner appealed the denial, and submitted an updated letter from Dr. Hain. Dr. Hain explained that barotrauma, or pressure injuries, commonly causes perilymph fistula. Pressure changes on airplanes are a primary source of pressure injuries. Def. Exs. B(7) and (8). In response to the plan's request for additional information regarding the date Wagner's perilymph fistula occurred, Wagner stated it occurred on July 21, 2005 – the last date he flew a plane. Def.

3

Ex. B(9) and (10). And Dr. Hain provided an October 17, 2005 report and examination notes. Wagner complained of dizziness, headaches, and ear pain. Dr. Hain stated Wagner's differential diagnosis is between migraine-associated vertigo and perilymph fistula. Def. Ex. B(11).

In accordance with the plan's appeal process, the plan forwarded Wagner's records to the Network Medical Review Elite Physicians ("NMR") for a claim evaluation. Def. Facts ¶ 20. NMR selected Elena Antonelli, M.D. to review the claim. *Id.* ¶ 21. Dr. Antonelli reported that Wagner's medical records show he was evaluated for symptoms consistent with perilymph fistula beginning in 2001, but was not diagnosed with perilymph fistula until 2005. Def. Ex. I at 4. She stated perilymph fistula is a difficult diagnosis to make; it is based on symptoms and history. *Id.* She reported that no specific traumatic event occurred to cause perilymph fistula, but stated that pressure changes during flight could cause or exacerbate perilymph fistula. *Id.* at 3.

The plan's Benefits Review and Appeals Board denied Wagner's appeal. Def. Exs. B(13) and K. Wagner's chronic sinusitis, migraines, and dizziness diagnosis was found to be a pre-existing condition because he received treatment for this during the 12 months prior to his effective coverage date. And no medical evidence showed the perilymph fistula occurred on July 21, 2005. Rather, Wagner's medical records showed he was treated for symptoms consistent with perilymph fistula prior to this date. Def. Ex. B(13) at 3-6.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

4

of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004) (citing *Celotex Corp.*, 477 U.S. at 323). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the nonmoving party. *See Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2002). A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II. Benefits Claim

Wagner argues the plan abused its discretion in denying his benefits claim because perilymph fistula is not a pre-existing condition, and it was caused by barotrauma during a July 21, 2005 flight. If an ERISA plan expressly grants the plan administrators or fiduciaries discretion to determine benefits eligibility or interpret plan terms, then the abuse of discretion standard of review applies in reviewing those decisions. *Ross v. Indiana State Teacher's Ass'n Ins. Trust*, 159 F.3d 1001, 1008-09 (7th Cir. 1998). The abuse of discretion and arbitrary and capricious standards of review are used interchangeably in this context. *Id.* Under this standard, a benefits denial will be upheld if it has rational support in the record. *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 576 (7th Cir. 2006). A plan's determination should be upheld unless it is "downright unreasonable." *Id.*

5

Wagner does not dispute that the plan grants its fiduciaries this discretion. But Wagner argues the abuse of discretion standard should be applied more rigorously in reviewing the plan's decision, citing *Metropolitan Life Ins. Co. v. Glenn*, ___ U.S. ___, 128 S. Ct. 2343 (2008). In *Glenn*, the plan administrator of a long-term disability plan not only evaluated benefit claims, but also was the plan sponsor and paid the benefits. This conflict of interest was held to be a necessary consideration in applying the abuse of discretion standard of review. *Id.* at 2351-52. It is undisputed the plan here is funded entirely by plan participant contributions. Def. Facts ¶ 3. The plan, therefore, does not operate under the conflict of interest discussed in *Glenn*, and this need not be considered in reviewing whether the plan abused its discretion in denying Wagner's claim.

Wagner argues the pre-existing condition exclusion does not apply because he was not diagnosed with perilymph fistula after his effective date of coverage, citing *Pitcher v. Principal Mut. Life Ins. Co.*, 93 F.3d 407 (7th Cir. 1996). Pitcher sought coverage under her health insurance policy for breast cancer treatment. The insurance company denied coverage under a pre-existing condition exclusion because Pitcher received treatment for a fibrocystic breast condition during the pre-existing condition period. *Id.* at 409-10. The insurance policy did not give the plan administrator or fiduciary discretion to determine benefits eligibility or construe the plan's terms. The insurance company's denial of benefits was therefore reviewed *de novo* under federal common law rules of contract interpretation. *Pitcher v. Principal Mut. Life Ins. Co.*, 870 F. Supp. 903, 906 (S.D. Ind. 1994) (Hamilton, J.). Summary judgment in favor of Pitcher was affirmed because treatment for a fibrocystic breast condition did not constitute treatment for breast cancer. *Pitcher*, 93 F.3d at 414-17.

6

The plan provides its fiduciaries discretion to determine benefits eligibility and construe the plan's terms. Under these circumstances, the question is whether the plan's denial of benefits has rational support in the record, not whether this court would deny benefits. *Jenkins v. Price Waterhouse Long Term Disability Plan*, ___ F.3d ___, No. 08-1909, 2009 WL 1175171, at *4 (7th Cir. May 4, 2009). The record supports application of the pre-existing condition exclusion. Dr. Antonelli reported perilymph fistula is diagnosed based on symptoms and history. Wagner's medical records showed he was evaluated for symptoms consistent with perilymph fistula beginning in 2001 and within the 12 months preceding Wagner's effective coverage date. *Cf. Bullwinkel v. New England Mut. Life Ins. Co.*, 18 F.3d 429, 432-33 (7th Cir. 1994) (breast lump treated before insurance policy's effective date but not diagnosed as cancer until after coverage commenced was pre-existing condition). The plan's determination that Wagner's treatment during this time period was for the same complex of symptoms was not unreasonable.

And the record supports denial of Wagner's claim on the additional exclusion for non-injury disabilities occurring within six months of coverage. The plan did not abuse its discretion in finding Wagner presented no medical evidence that a specific injury caused perilymph fistula on July 21, 2005, as he claimed.

Wagner argues the plan improperly deferred to Dr. Antonelli's opinion that Wagner's symptoms were consistent with a 2001 onset of perilymph fistula. Wagner argues the plan should have deferred to his treating physicians' opinions that his prior dizziness was a symptom of sinusitis and migraine headaches, not perilymph fistula, citing *Beecher v. Conn. Gen. Life Ins. Co.*, No. 01 C 7741, 2002 WL 31681473 (N.D. Ill. Nov. 26, 2002) (Moran, J.). In *Beecher*, summary judgment for the insurance company was denied because its claims administrator

7

credited an opinion from Beecher's doctor over an unexplained conflicting opinion from the same doctor in denying Beecher's benefits claim. *Id.* at *3.

Wagner presents no evidence that Dr. Antonelli presented conflicting opinions. Plan administrators are not required to accord special deference to treating physician opinions. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). The record contains rational support for the plan's application of the pre-existing condition exclusion. Dr. Antonelli opined that Wagner's medical records, including those of his treating physicians, showed he was evaluated for symptoms consistent with perilymph fistula beginning in 2001.

Wagner argues the plan abused its discretion in relying on Dr. Antonelli's opinion because she is not an inner ear disorder specialist like Dr. Hain, and does not have the requisite background to evaluate Wagner's condition. Wagner cites a website address to challenge Dr. Antonelli's credentials. This is not admissible evidence. And a physician qualification comparison is not the appropriate analysis in an ERISA case. *Hightshue v. AIG Life Ins. Co.*, 135 F.3d 1144, 1148 (7th Cir. 1998). The appropriate question is whether Dr. Antonelli had sufficient experience and expertise to warrant the plan's reliance on her opinion. *Id.* It is undisputed that Dr. Antonelli is board certified in occupational medicine and emergency medicine; she holds a Federal Aviation Administration medical examiner certificate. Def. Facts ¶ 21. Wagner presents no genuine issue of material fact regarding Dr. Antonelli's qualifications, and the plan did not abuse its discretion in relying on her opinion.

Wagner contends the plan abused its discretion in denying benefits because it presented alternative bases for denying his claim – the pre-existing condition exclusion and the exclusion for non-injury disabilities occurring within six months of coverage. But the record demonstrates

the plan responded to Wagner's initial claim for chronic sinusitis, migraines, and dizziness, and to his subsequent perilymph fistula claim. The plan considered Wagner's submissions and medical records, and elicited additional information from his doctors. Wagner presents no genuine issue of material fact that the plan abused its discretion in denying his benefits claim.

## CONCLUSION

The plan's summary judgment motion is granted. The plan did not abuse its discretion in denying Wagner's long-term disability benefits claim.

ENTER:

Suzanne B. Conlon
United States District Judge

May 18, 2009